UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LEE-HUNT INTERNATIONAL, INC. ) <br> Wyoming Corporation, MARTIN L. ) <br> LEE, President and CEO, JOSEPH ) <br> BAUGHMAN, Vice-President, ) <br> WASHINGTON INTERNATIONAL ) <br> INSURANCE CO., and FRONTIER ) <br> INSURANCE CO. ) <br> ) <br> Defendants. ) <br> ) | Court No. 02-00816 |

## COMPLAINT

The United States of America, by and through its undersigned attorneys, brings this action and alleges the following:

1. This is an action to collect civil penalties and recover lost duties pursuant to 19 U.S.C. § 1592.

2. Pursuant to 19 U.S.C. §1592, it is unlawful for any person by fraud, gross negligence or negligence, to enter, introduce or cause the entry or introduction of merchandise into the United States by means of any material and false documents, statements, acts and/or any material omissions.

3. This Court possesses exclusive jurisdiction to entertain this action pursuant to 28 U.S.C. § 1582.

4. At all relevant times, defendant Lee-Hunt International,

Inc. ("LHI") was a Wyoming corporation with its principal place of business at 1280-B-Huff Lane, Jackson Hole, WY 83001.

5. At all relevant times, Martin L. Lee ("Lee") was the President and Chief Executive Officer of LHI, is a resident of the state of Wyoming, and resides at Ranch Townhomes #2, Wilson, Wyoming 83002.

6. Joseph Baughman ("Baughman") was the Vice-President of LHI from approximately 1993 to 1996, is a resident of the state of Wyoming, and resides at 8055 Quill Road, Jackson, Wyoming 83001.

7. At certain times relevant, defendant, Washington International Insurance Co. ("Washington International") was a surety for LHI, and is Chicago corporation with offices at 1200 Arlington Heights Road, Itasca, IL 60143-3162.

8. At certain times relevant, defendant, Frontier Insurance Company ("Frontier") was a surety for LHI, and is a New Jersey corporation with offices at Two Hudson Place, 4th Floor, Hoboken, NJ 07030-5594.

9. From about October 1, 1991 to March 29, 1996, the defendants entered, introduced, or caused to be entered or introduced, into the United States merchandise in 76 entries, as indicated on the attached listing of Customs entries. (Exhibit A-1). Specifically, the merchandise was a small,

portable flashlight chargeable by the cigarette lighter of an automobile, and titled "the Dashlite."

10. The merchandise known as the Dashlite and described in paragraph number 9. above was entered, introduced, or caused to be entered/introduced, into the United States by means of material and false documents, statements, acts and/or omissions in that LHI, Martin Lee, and Joseph Baughman knowingly filed or caused to be filed documents with the United States Customs Service that falsely understated the price of the merchandise being imported.

11. For example, a March 9, 1993 memorandum from Simon Hunt ("Hunt"), the Australian exporter of the Dashlite, to Lee states:

> Steve is worried about the $1.75 invoice we have been charging you. It represents a loss of income to the Customs department as it is, and the IRS could be very annoyed at the loss when/if your price goes up. The options seem to be (i) put it up; (ii) leave it be; (iii) put it up gradually; (iv) adjust all past invoices to 5.40 and take them to Customs with your tail between your legs. Apparently in Australia they let you off with fines if you own up before you are caught. Other options would be changing Dashlites name or claiming an improvement e.g. Dashlite with battery pack!

(Exhibit C).

12. By further example, a letter, dated February 21, 1996, to Wilfred Geisler of GTS Industries ("GTS") (the Australian manufacturer of the Dashlite), from Baughman,

-3-

states:

> For customs purposes your invoice must reflect the total value of the goods ($4.10). You can make a dummy invoice, or perhaps there is documentation you can file such as invoice from GPI [sic]. To avoid conflict with US Customs, please allow us to review paper work before initial shipment.

(Exhibit D).

13. Customs agents interviewed the owner/president of GTS, and learned that GTS never sold Dashlites to LHI for less than $3.60, significantly more than the $1.75 continuously reported by LHI on its invoices.

14. At various times during the relevant period, defendants knowingly and intentionally undervalued the Dashlite on LHI invoices by nearly 50% below its true value ($1.75 as opposed to $5.40 in Australian dollars). This undervaluation scheme occurred principally from October 30, 1992 to March 4, 1993. (Exhibit A-1).

15. In addition, the Dashlite described above was entered, introduced, or caused to be entered/introduced, into the United States by means of material and false documents, statements, acts and/or omissions in that LHI, Martin Lee, and Joseph Baughman knowingly filed or caused to be filed documents with the United States Customs Service that falsely misdesribed and/or misclassified the imported merchandise.

16. For example, a letter dated April 3, 1995, from Lee

to Hunt illustrates the defendants' intentional misdescription of the Dashlite so as to reduce LHI's duty liability.

> The DL [Dashlite] is currently brought into the USA as "other than a flashlight" specifically automotive product, duty is 8.2%. At anytime customs may do a physical examination. They did it once before and changed the duty to 22.5%. Although our documents describe the product as automotive [,] <u>the packaging states it is a flashlight [and] a physical check confirms this</u>.
> We can eliminate this problem by importing in gift boxes or in bulk as per your suggested divided system with no reference to flashlight.

(Exhibit E) (emphasis added).

17. At various times during the relevant period, defendants intentionally misdescribed the Dashlite as an "automotive accessory" and/or a "lamps/other" (HTSUS 8513.10.40, duty rate 5.5%-6.9%), instead of as a "flashlight" (HTSUS 8513.10.20, duty rate 20%-25%), with the purpose of avoiding the higher applicable Customs' duties. This misclassification scheme occurred principally from October 30, 1992 to March 29, 1996. (Exhibit A-1)

18. The defendants knowingly and with the purpose of evading payment of correct duties, misdescribed, misclassified and undervalued the imported merchandise in contradiction of their duty to exercise reasonable care in filing import documents with the U.S. Customs Service, and in violation of 19 U.S.C. § 1484(a)(1).

19. The false statements and/or omissions referenced in paragraphs 10 through 17 were material because they (1) affected the appraisal of the merchandise, (2) prevented Customs from assessing the proper duties upon the merchandise, and (3) resulted in the inability of the United States to monitor properly the volume of restricted goods entering into the United States.

20. The material and false statements and/or omissions referenced in paragraphs 10 through 17 resulted from the intentional fraudulent conduct of defendants Lee, Baughman, and their company LHI.

21. The material and false statements and/or omissions referenced in paragraphs 10 through 17 above constitute fraudulent violations of 19 U.S.C. § 1592.

22. As a result of defendants' fraudulent violations of 19 U.S.C. § 1592 referenced above, individually or collectively, the United States was deprived of lawful customs duties in the amount of $240,936.65 (Exhibit A-1).

23. As a result of their fraudulent violations of 19 U.S.C. § 1592 referenced above, and pursuant to 19 U.S.C. § 1592(d), defendants Lee, Baughman, and their company LHI, are liable, jointly and severally, to the United States for all outstanding duties in the amount of $240,936.65.

24. As a result of their fraudulent violations of 19 U.S.C. § 1592 referenced above, and pursuant to 19 U.S.C. § 1592, defendants Lee, Baughman, and their company LHI, are liable, jointly and severally, to the United States for a penalty in the amount of $1,746,964.99 which represents the appraised domestic value of the 76 Dashlite entries at issue in this case (Exhibit A-1).

25. 53 of the entries at issue in this case were secured by bonds, the numbers of which are set forth in Exhibits B-1 and B-2, and which are attached and incorporated by reference.

26. Pursuant to the terms of its bond referenced in Exhibit B-1 and 19 U.S.C. § 1592(d), defendant Washington International is liable to the United States for duties due upon 32 entries occurring from September 29, 1994 to March 29, 1996, and listed in Exhibit A-2. This liability is in the amount of $50,000 for each year the bond was effective, or $100,000.

27. Pursuant to the terms of its bond referenced in Exhibit B-2 and 19 U.S.C. § 1592(d), defendant Frontier is liable to the United States for duties due upon 21 entries occurring from November 23, 1993 to June 6, 1994, and listed in Exhibit A-3. This liability is in the amount of $50,000, representing the one year the bond was effective.

28. None of the defendants have paid any part of the outstanding lawful duties described in paragraph 23 above; nor have the defendants paid any part of the assessed penalty described in paragraph 24 above.

29. All requisite administrative procedures have been exhausted.

### COUNT I

30. The allegations contained in paragraphs 1 through 29 above are restated and incorporated by reference.

31. The material false statements described in paragraphs 10 through 17 above were committed, submitted, made, or caused by, defendants Lee, Baughman, and their company LHI knowingly, voluntarily, and intentionally, and thus were fraudulent violations of 19 U.S.C. § 1592(a).

32. As a result of the fraudulent violations of 19 U.S.C. § 1592(a) described above, defendants Lee, Baughman, and their company LHI, are liable to the United States, jointly and severally, for a penalty amounting to $1,746,964.99 which represents the domestic value of the 76 Dashlite entries at issue in this case.

33. No part of the $1,746,964.99 has been paid and, thus, defendants Lee, Baughman, and their company LHI, remain liable to the United States, jointly and severally, for

penalties of $1,746,964.99, plus pre-judgment and post-judgment interest as provided by law.

## COUNT II

34. The allegations contained in paragraphs 1 through 33 above, are restated and incorporated by reference.

35. Pursuant to 19 U.S.C. § 1592(d), defendants Lee, Baughman, and their company LHI, are liable to the United States, jointly and severally, for $240,936.65 in lawful duties of which the United States has been deprived, plus interest as provided by law.

36. No part of the duties have been paid and, thus, defendants Lee, Baughman, and their company LHI remain liable to the United States, jointly and severally, for the entire $240,936.65 plus interest as provided by law.

## COUNT III

37. The allegations contained in paragraphs 1 through 36 above are restated and incorporated by reference.

38. Pursuant to 19 U.S.C. § 1592(d), defendant Washington International is liable for $100,000 in lawful duties ($50,000 per entry-year), for the entry years listed in Exhibit A-2, by the terms of its bond referenced in Exhibit B-1.

39. Despite due demand, defendant Washington

International has failed to pay any part of the duties and, thus, Washington International, remains liable for $100,000 plus interest as provided by law.

## COUNT IV

40. The allegations contained in paragraphs 1 through 39 above are restated and incorporated by reference.

41. Pursuant to 19 U.S.C. § 1592(d), defendant Frontier is liable for $50,000 in lawful duties, for the entry years listed in Exhibit A-3, by the terms of its bond referenced in Exhibit B-2.

42. Despite due demand, defendant Frontier has failed to pay any part of the duties and, thus, Frontier remains liable for $50,000 plus interest as provided by law.

WHEREFORE, the United States respectfully request that the Court enter judgment in its favor as follows:

(1) against defendants Lee, Baughman, and their company LHI, for a penalty of $1,746,964.99 for fraud, plus interest and costs as provided by law;

(2) against defendants Lee, Baughman, and their company LHI, jointly and severally, in the amount of $240,936.65 which represents lost customs duties for the period from about October 30, 1992 through March 29, 1996, plus interest and

costs as provided by law;

(3) against Washington International in the amount of $100,000 which represents the lost customs duties for the entries made from about September 29, 1994 through March 29, 1996, for which Washington International was the surety, plus interest and costs as provided by law;

(4) against Frontier in the amount of $50,000 which represents the lost customs duties for the entries made from about November 23, 1993 through June 6, 1994, for which Frontier was the surety, plus interest and costs as provided by law, and;

(5) such other and further relief as this Court deems appropriate.

                      Respectfully submitted,

                      ROBERT D. MCCALLUM, JR.,
                      Assistant Attorney General

                      DAVID M. COHEN
                      Director

                      A. DAVID LAFER
                      Senior Trial Counsel

                      PATRICK J. MERCURIO
                      Trial Attorney
                      Commercial Litigation Branch
                      Civil Division
                      Department of Justice
                      Attn:  Classification Unit
                      8th Floor, 1100 L St.
                      Washington, D.C.  20530
                      Tel:  (202) 307-1011
                      Fax:  (202) 307-0972

December 19, 2002         Attorneys for Plaintiff



RECEIVED & FILED
2002 DEC 23  P 1:24

**United States Court
of International Trade**

OFFICE OF THE CLERK
One Federal Plaza
New York, NY 10278-0001

# NOTICE

The physical document which comprises this docket entry exceeds the Court's Bulky Document Standard (BDS), and therefore is not attached.

The physical document may be viewed in the case file for the action. Arrangements for obtaining a copy of the document may be made by contacting the Clerk's Office at (212) 264-2800.